(C.D. 2353)

Clarence P. Cook *v.* United States

## United States Customs Court, Third Division

(Decided July 10, 1962)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Sheila Ziff* and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: Certain wheat, imported from Canada, is conceded to have been at the time of importation "in fact commercially unfit for human consumption," due to frost damage. Plaintiff claims that the frost damaged wheat is dutiable at the reduced rate provided in paragraph 729 of the Tariff Act of 1930 for wheat, unfit for human consumption. Defendant contends that the reduced rate is not applicable to this wheat because, although in fact commercially unfit for human consumption, it was sold, after importation, to a buyer who blended the damaged wheat, or most of it, with a sufficient quantity of undamaged wheat, so that the blend, milled, was sold as flour.

The record consists of a stipulation by counsel in open court, together with testimony adduced by defendant. The stipulated facts are as follows:

1, the merchandise consisted of wheat, imported from Canada;

2, the wheat contained more than 30 percent by weight of frost-damaged kernels;

3, said wheat was found by the United States Department of Agriculture to be unfit for human consumption in its imported condition and was in fact commercially unfit for human consumption without being blended with wheat which was fit for human consumption;

4, said wheat after being imported was blended with wheat which was fit for human consumption and after being so blended, all or most of said imported wheat was commercially fit and was used in the production of flour or other products for human consumption;

5, the protest was timely;

6, all papers transmitted by the Collector to the Court, including the reports of the Department of Agriculture may be deemed in evidence as Plaintiff's Collective Exhibit 1. [Record 4, 5.]

The testimony of defendant's witnesses did not relate to these stipulated facts, but seems intended to impute to plaintiff negligence, or perhaps even fraud, because he did not follow the imported wheat through to a domestic purchaser in order to insure that it was not, in fact, used for human consumption.

The presiding judge repeatedly expressed his doubts as to the relevancy of such testimony to the issue of tariff classification. Certain observations should be made as to the line of testimony.

This is not a proceeding for forfeiture of the damaged wheat, on grounds of fraud, a proceeding which is authorized by section 592 of the Tariff Act of 1930. We need not here speculate whether such testimony would be relevant to a section 592 proceeding, for no such proceeding is before us.

This is not a proceeding by the Department of Agriculture, or any other governmental agency, predicated on a claim that the flour that was milled from the blended wheat was deleterious. Indeed, it is implicit in defendant's case that the flour was not deleterious.

While good faith is expected of those who deal with others, including those who deal with the Government, good faith is not a condition of tariff classification. The question in tariff classification is, what is the merchandise at the time of its importation. *United States* v. *Baker Perkins, Inc., et al.*, 46 C.C.P.A. (Customs) 128, C.A.D. 714; *United States* v. *P. John Hanrahan, Inc., et al.*, 45 C.C.P.A. (Customs) 120, C.A.D. 684; *United States* v. *The Winkler-Koch Engineering Co.*, 41 C.C.P.A. (Customs) 121, C.A.D. 540.

In view of the precise fact that has been stipulated of record, namely, that this wheat "was in fact commercially unfit for human consumption," it is difficult to reconcile this record with defendant's argument. That argument is that, because of processing subsequent to importation, in combination with other wheat, the imported wheat became part of a manufactured article, flour, that presumably was fit for human consumption, and, hence, the imported wheat was not in fact unfit for human consumption when imported. This argument proceeds in circles.

If the record before us merely showed a percentage of frost-damaged wheat kernels, we would be required to decide whether such damage did or did not make the imported wheat unfit for human consumption. But that is not the record the parties have presented to us. They have stipulated that this wheat was *in fact* commercially unfit for human consumption as imported.

Whether or not defendant relied on advices of the Department of Agriculture in so stipulating, is not material. Mere proof of a ruling by the Department of Agriculture would not be determinative of tariff classification. *United States* v. *Mercantil Distribuidora et al.*, 45 C.C.P.A. (Customs) 20, C.A.D. 667. But here we have the stipulation of counsel, in open court, not merely as to the finding of the Department of Agriculture, but also as to what the imported wheat *in fact* was.

It is well established that tariff laws speak in the language of commerce. *C. J. Tower & Sons* v. *United States*, 41 C.C.P.A. (Customs) 195, C.A.D. 550; *United States* v. *Union Olive Oil Co., Inc.*, 38 C.C.P.A. (Customs) 73, C.A.D. 442; *Hartmann Trunk Co.* v. *United States*, 27 C.C.P.A. (Customs) 254, C.A.D. 95. In the absence of proof

to the contrary, the commercial and common meanings of a term are the same. *United States* v. *M. & D. Miller, Inc.*, 41 C.C.P.A. (Customs) 226, C.A.D. 556; *Floral Arts Studio, et al.* v. *United States*, 46 C.C.P.A. (Customs) 21, C.A.D. 690. Here, there is proof as to what this wheat was, commercially. There is no argument, and indeed there are no proofs, that the commercial and common meanings of the term are different.

If plaintiff was negligent, or perhaps even worse—and this is neither relevant here, nor proved—the Government was not powerless to control the situation. There is more than a hint that some of those charged with official responsibility had an erroneous understanding of their duty. Imported foodstuffs, not fit for human consumption, do not easily move into the food markets of the country, if vigilant officers exercise their full powers.

It remains to note that the issue of timely protest filing is not before us.

On the record before us, showing that, in its condition as imported, this wheat was not, in fact, commercially fit for human consumption, the protest is sustained.

Judgment will be entered accordingly.